**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric BOUDETTE, ) | No. CV-05-0011-PHX-SMM (VAM) |
| Petitioner, ) | **MEMORANDUM OF DECISION AND ORDER** |
| v. ) | |
| Dora SCHRIRO, et al., ) | |
| Respondents. ) | |

Pending before the Court is Petitioner's Motion for Certificate of Appealability. [Doc. No. 42] After reviewing Petitioner's Motion and Petitioner's Amended Petition for Writ of Habeas Corpus, the Court issues the following Memorandum of Decision and Order.

**BACKGROUND**

On July 3, 1998, Petitioner was pulled over by Yavapai County Deputy Sheriff Chris Sorenson ("Sorenson") because the right taillight of Petitioner's pickup truck was out. As Sorenson was providing Petitioner's license plate number to the police dispatcher, Petitioner exited his truck and began moving "very quickly" towards the patrol car in which Sorenson was seated. Sorenson then got out of his patrol car and twice ordered Petitioner to "stop." Petitioner asked Sorenson "what's your problem" and walked along the passenger side of Sorenson's vehicle. Petitioner drew his .44 Magnum when he reached the rear of the patrol car, and Sorenson drew his pistol and returned to the front seat of his vehicle for cover. Petitioner then fired five shots into the patrol car. Bullets traveled throughout the vehicle,

and bullet fragments were found in several locations in the car. Sorenson returned fire at Petitioner, who fled into the countryside. Neither man was seriously injured.

Petitioner was tried by a jury on three counts: criminal damage, attempted first degree murder, and aggravated assault. At trial, Petitioner testified that he had fired in self-defense, because he had been blinded by the patrol car's spotlight and could not make out what was being said to him and heard shots being fired. He returned fire towards the light while he was in front of the patrol car. To refute the bullet holes and fragments, Petitioner contended that Sorenson had shot up the patrol car after Petitioner had fled, and that the fragments were planted by investigators later on the scene.

On September 15, 2000, Petitioner was convicted of all three counts by a jury in Yavapai County Superior Court. Petitioner filed a Petition for Writ of Habeas Corpus on January 4, 2005 [Doc. No. 1], and filed an Amended Petition on February 22, 2005. [Doc. No. 4] On October 12, 2005, Magistrate Judge Virginia A. Mathis issued a Report and Recommendation [Doc. No. 22], urging the Court to deny and dismiss with prejudice Petitioner's Petition, to which Petitioner filed Objections on December 12, 2005. [Doc. No. 28] The Court adopted the Report and Recommendation in an Order filed January 13, 2006. [Doc. No. 35]  A subsequent Motion for Reconsideration was denied. [Doc. No. 38] Petitioner filed a Notice of Appeal and a Motion for Certificate of Appealability ("COA"), which is now before the Court.

## STANDARD OF REVIEW

A habeas corpus petitioner, who is complaining of detention imposed by a state court, cannot appeal from a denial of a petition for writ of habeas corpus unless a circuit justice or a circuit or district judge issues a COA under 28 U.S.C. § 2253(c)(2). Fed. R. App. P. 22(b)(1). "If an applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue." Id.; see also 28 U.S.C. § 2253(c)(1)(A).

The standard for granting a COA "is relatively low." Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002) (citing Slack v. McDaniel, 529 U.S. 473, 483 (2000)). The COA

1 ruling is not an adjudication of the merits of a claim: the "threshold inquiry does not require
2 full consideration of the factual or legal bases adduced in support of the claims," nor does it
3 "require a showing that the appeal will succeed." Miller-El v. Cockrell, 537 U.S. 322, 336-
4 37 (2003).  A COA is granted on an issue-by-issue, or claim-by-claim, basis and appellate
5 review is limited to those issues alone. Hiivala v. Wood, 195 F.3d 1098, 1103 (9th Cir.
6 1999).  The court must resolve doubts about the propriety of a COA in the petitioner's favor.
7 Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc).

8 If a habeas petition is dismissed on procedural grounds, a petitioner is not precluded
9 from receiving a COA. Slack, 529 U.S. at 483.  "When the district court denies a habeas
10 petition on procedural grounds without reaching the prisoner's underlying constitutional
11 claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find
12 it debatable whether the petition states a valid claim of the denial of a constitutional right *and*
13 that jurists of reason would find it debatable whether the district court was correct in its
14 procedural ruling." Id. at 484 (emphasis added).  Thus, there are two components to a COA
15 determination where dismissal was based on procedural grounds, "one directed at the
16 underlying constitutional claims and one directed at the district court's procedural holding."
17 Id. at 484-85.

18 A district court may issue a COA only if the applicant has made a substantial showing
19 of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2). A "substantial
20 showing" requires the applicant demonstrate "that reasonable jurists could debate whether
21 . . . the petition should have been resolved in a different manner or that the issues presented
22 were adequate to deserve encouragement to proceed further." Slack, 529 U.S. at 475
23 (internal quotation marks omitted).

## DISCUSSION

25 On January 13, 2006, this Court dismissed Petitioner's Petition for Writ of Habeas
26 Corpus with prejudice, after concluding the Petition was time-barred by 28 U.S.C.
27 2244(d)(1), which codifies the one-year statute of limitations period on federal habeas
28 petitions by state prisoners enacted by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"). [Doc. No. 35] The Court denied Petitioner's Motion for Reconsideration on February 7, 2006. [Doc. No. 38] Because his Petition was dismissed on procedural grounds, Petitioner is entitled to a COA only if he can show both that (1) reasonable jurists would find it debatable whether this Court was correct in its procedural ruling and (2) reasonable jurists would find it debatable whether the Petition states a valid claim of the denial of a constitutional right. Slack, 529 U.S. at 484.

**A. Procedural Grounds**

In the Order filed January 13, 2006, this Court adopted and incorporated the Report and Recommendation of Magistrate Judge Mathis, which explained why the one-year limitations period should not be tolled under 28 U.S.C. § 2244(d). In her Report and Recommendation, Judge Mathis focused on statutory tolling and concluded that Petitioner filed his Petition nineteen months after the limitations period began running. Judge Mathis also noted that even if the Court were to accept Petitioner's argument that his improperly filed "motions" in state superior court tolled the limitations period, Petitioner would still be left with sixteen months of untolled time. This Court agreed with that analysis and adopted the Report and Recommendation, and continues to agree at this stage.

While the Court's focus was on statutory tolling in prior Orders, the Court will now address Petitioner's equitable tolling arguments. "Equitable tolling is justified in few cases." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted). Petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." Id. Petitioner must establish two elements in order to equitably toll the limitations period: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, --- U.S. ----, 125 S.Ct. 1807, 1814 (2005).

Here, Petitioner asserts three arguments as to why equitable tolling should apply in this case. First, Petitioner argues that his limited access to the law library constituted an

"extraordinary circumstance" which warrants equitable tolling.  Petitioner maintains that prisoners' visits to the law library are limited to twice monthly, and those visits are sometimes canceled due to lockdowns, holidays, librarians' vacation time, days off, conferences, or training classes.  Prisoners cannot obtain copes until a month before their court deadline, and Petitioner also contends that access to computerized research is needed.  However, "[p]rison officials of necessity must regulate the time, place, and manner in which library facilities are used.  The fact that an inmate must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the courts."  Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985).  Petitioner lists six specific dates when his library time was canceled due to circumstances beyond his control, but the Court finds that a handful of dates during which Petitioner's access was denied does not rise to the level of an "extraordinary circumstance" worthy of equitable tolling, particularly in light of the fact that Petitioner has not shown why a denial of access on those dates was the but-for and proximate cause of his tardy Petition.  See Spitsyn, 345 F.3d at 799.  Furthermore, the Supreme Court has held that there is no constitutional right to a law library.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  While Petitioner suggests it is time to revisit Lewis v. Casey, this Court is bound by that precedent and will rule accordingly.

Next, Petitioner argues that inadequate treatment for a beating he received in 2001 delayed his filing.[1]  Petitioner contends that he has not recovered from his injuries and that headaches, tinnitus, and poor eyesight made it impossible for him to work on his Petition "on certain days and for certain extended periods."  As a "for instance," Petitioner alleges that he was incapacitated for about a month, from late April until late May of 2004.  The Court, however, finds that this argument does not warrant equitable tolling, because Petitioner has failed to show that those events made it impossible for him to file on time, or for that matter, that it was impossible for him to file in between his periods of incapacitation.  See Spitsyn,

---

[1] Although it appears Petitioner did not raise this argument until the instant Motion, the Court addresses it in the interest of completeness.

- 5 -

1  345 F.3d at 799.  Indeed, Petitioner ultimately filed his Petition, despite his medical
2  condition.
3        Last, Petitioner alleges that the prison was locked down during January and February
4  of 2004, as well as March 16, 2004; March 23, 2004; May 9, 2004; June 3, 2004; September
5  22, 2004; October 23, 2004; December 2, 2004; and December 10, 2004.  Petitioner claims
6  that he was denied access to the law library during that time.[2]  However, the Court finds that
7  lockdowns are not an "extraordinary circumstance" that triggers equitable tolling, as
8  lockdowns are part of prison life.  Furthermore, Petitioner has failed to show why it was
9  impossible for him to file his Petition between the times the prison was locked down.
10 Petitioner does argue that the prison guards "were extremely tense" during the rest of 2004,
11 which resulted in "minor rules violations" being punished with great loss of privileges.
12 Petitioner himself had his privileges suspended for 30 days for having a "defective ID."
13 However, the Court does not find that "tighter security, overcrowding, and [reduced] food"
14 constitute "extraordinary circumstances."  In addition, the Court is not inclined to equitably
15 toll the limitations period for Petitioner during the month in which he lost privileges due to
16 his own violation of prison rules, however "minor" Petitioner defines it.
17       Finally, the Court notes that even if it were to equitably toll the limitations period
18 during the dates Petitioner was denied access to the law library and was locked down (a total
19 of 12 days) and the month during which Petitioner was "incapacitated" due to his medical
20 condition, Petitioner's Petition would still be untimely. For Petitioner's equitable tolling
21 argument to succeed, the Court would have to toll the time in which there was "tighter
22 security, overcrowding, and [reduced] food" in 2004.  The Court will not equitably toll
23 during that period for the reasons stated above, however.
24       Although the Court remains convinced that Petitioner is not entitled to tolling,
25 statutory or equitable, the Court finds that reasonable jurists could differ on the Court's
26
27
28     [2]The Court notes that two of those dates, March 16 and 23, were also listed previously in Petitioner's argument that the prison library access scheme is flawed.

- 6 -

1  determination that Petitioner is not entitled to equitable tolling.  Therefore, the Court finds
2  that Petitioner has satisfied the first prong of the Slack test described above.

### B. Underlying Constitutional Claims

Under the Slack test, Petitioner must also demonstrate that reasonable jurists would find it debatable whether the Petition states a valid claim of the denial of a constitutional right.  In his Amended Petition for Writ of Habeas Corpus, Petitioner alleges three reasons why his conviction violates his constitutional rights: (1) he was denied discovery of Deputy Sorenson's personnel records that would have allowed him to attack Sorenson's qualifications to be a county sheriff and credibility; (2) the initial traffic stop was unlawful; and (3) he was denied his right to call two witnesses.  (Am. Pet. at 5-14.)  The Arizona Court of Appeals addressed claims two and three on direct appeal and denied relief.  (Ex. H to Resp. to Am. Pet.)  Petitioner appealed to the Arizona Supreme Court and included claim one in that Petition for Review, and the Arizona Supreme Court denied review.  (Ex. J to Resp. to Am. Pet.)  Petitioner then filed a pro-per petition for post conviction relief, and the Arizona Court of Appeals dismissed that petition on the grounds that all the claims were procedurally precluded.  (Ex. U to Resp. to Am. Pet.)

### 1. *Discovery of Deputy Sorenson's records*

Petitioner first argues that he was entitled to discovery of Deputy Sorenson's records so that he could challenge Sorenson's qualifications to be a deputy county sheriff and credibility.[3]  (Am. Pet. at 5.)  Petitioner states that he moved for this disclosure three times and the Arizona Court of Appeals ordered an in camera inspection by the lower court judge, but that "Petitioner still did not receive the records."  (Id.)

A cursory review of this allegation, see Miller-El, 537 U.S. at 336-37 (COA ruling is not adjudication of merits, nor a full consideration of factual or legal bases of claim, nor finding that appeal will succeed), suggests no constitutional violation.  The Record reveals

---

[3]On the last line of the "Supporting Facts" section of this page of the Amended Petition, Petitioner also states "Incompetent Counsel."  However, this argument fails, as Petitioner has not provided any support for his assertion.

- 7 -

that Judge Sterling conducted "an in camera inspection of Deputy Sorenson's personnel file as requested by [Petitioner] and found no obvious internal affairs investigation reports or documents in the personnel file and also found no documents in the file which required disclosure." (Ex. O to Resp. to Am. Pet.) Petitioner moved for an investigation of the propriety of Judge Sterling's review of the records, but the Yavapai County Superior Court found that Petitioner's Motion did "not contain reliable information that Judge Sterling [] committed a violation of the Code of Judicial Conduct." (Ex. M to Resp. to Am. Pet.) Petitioner then moved for a more definite statement and reconsideration, and the Superior Court determined that it had no "responsibility to conduct an exhaustive investigation as to whether Judge Sterling has committed malfeasance, [Petitioner] may file a complaint with the Commission on Judicial Conduct." (Ex. O to Resp. to Am. Pet.)

Petitioner's Petition makes no mention of Judge Sterling's review of the records, and Petitioner does not allege that Judge Sterling's determination was erroneous. Rather, Petitioner simply states that he "still did not receive the records." (Am. Pet. at 5.) The Court finds no constitutional violation on these facts.

### 2. *Lawfulness of traffic stop*

Next, Petitioner alleges that the traffic stop that precipitated this case was unlawful, thus violating his right against unreasonable searches and seizures. The grounds for the stop was that one of the taillights on Petitioner's vehicle was inoperative. The Record shows that Deputy Sorenson's testimony regarding this fact was confirmed by an Arizona Department of Public Safety officer. (Ex. H to Resp. to Am. Pet. at 8.) Petitioner argues, however, that other witnesses testified that the taillights on Petitioner's truck were operating. (Am. Pet. at 6.)

The Court finds that no constitutional violation exists with regard to the traffic stop. Petitioner was pulled over under a valid Arizona law, A.R.S. 28-921(A)(1)(b), for an inoperative taillight. Two officers testified to this fact. Petitioner put on witnesses who testified contrary to the two officers, but apparently the jury did not find the defense witnesses credible. In any event, "28 U.S.C. § 2254(d) gives federal habeas courts no license

1 to redetermine credibility of witnesses whose demeanor has been observed by the state trial
2 court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). A traffic
3 violation, such as a malfunctioning or inoperative taillight, provides reasonable, founded
4 suspicion for a brief investigatory stop. See Whren v. United States, 517 U.S. 806, 813
5 (1996); United States v. Pulliam, 405 F.3d 782, 787 (9th Cir. 2005) (a "malfunctioning
6 taillight provided lawful grounds for the stop"); United States v. Gutierrez-Mederos, 965
7 F.2d 800, 803 (9th Cir. 1992).

### 3. *Inability to call witnesses*

9 Last, Petitioner alleges a "denial of the due process clauses of the Fifth and Fourteenth
10 Amendments of the United States Constitution for a fair and impartial trial before a neutral
11 court and without malicious prosecution." (Am. Pet. at 7.) Specifically, Petitioner argues
12 that he was unconstitutionally prevented from calling two witnesses. The Court addresses
13 each witness in turn.

### A. Ramon Rivera

15 Petitioner contends that his inability to call former deputy sheriff Ramon Rivera
16 ("Rivera") as a defense witness violates his right to due process. (Id. at 8-10.) After a
17 cursory review of this allegation, see Miller-El, 537 U.S. at 336-37, the Court finds that no
18 constitutional violation.

19 Rivera was the first officer, aside from Sorenson, on the scene. During an interview,
20 Rivera discussed Sorenson's demeanor immediately following the incident in question, as
21 well as Sorenson's reputation as a law enforcement officer. Rivera also talked about what
22 Sorenson told him right after the incident, but Rivera noted that he could not remember
23 exactly what Sorenson had said.

24 Rivera was initially listed as a prosecution witness and was subpoenaed. Somehow,
25 the subpoena was released. Both Petitioner's then-defense counsel and the prosecutor made
26 efforts to locate and/or secure Rivera as a witness, but Rivera had joined the United Nations
27 peacekeeping forces and was deployed to East Timor at the time of trial. The trial judge
28 made a finding of unavailability, and denied Petitioner's motions to either dismiss the charges

against him or admit the transcript of the Rivera interview on the basis that the transcript did not meet the requirement of Rule 804(b)(5) of the Arizona Rules of Evidence. Specifically, the trial judge found that Rivera's statements were not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."

This Court agrees with the trial court's finding that Rivera was unavailable despite both parties' efforts to contact him. The Court further concurs with the trial court that the Rivera interview does not bear sufficient indicia of reliability, and that Rivera's statements are not more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. Thus, the Court finds that the interview of Rivera is inadmissible.

In any case, the Court finds that most of the testimony Petitioner argues that Rivera would give constitutes inadmissible hearsay, including reputation evidence. Also, other officers on scene could testify as to Sorenson's demeanor, and Sorenson's locations at various times are matters of forensics. Moreover, it is not clear to the Court that anything Rivera said during his interview[4] exculpates Petitioner of the crimes. Petitioner argues that Rivera's statement that Sorenson told him Petitioner got out of his truck and came running at Sorenson "supports [Petitioner's] testimony that he acted in self-defense." (Am. Pet. at 8.) However, the Court finds Petitioner's argument unpersuasive, as Rivera also stated during the interview that he did not remember exactly what Sorenson told him after the incident. Thus, the Court thus finds Petitioner's argument unpersuasive.

Therefore, for the above evidentiary reasons, the Court finds no constitutional violation occurred with regard to Rivera.

### B. Dr. Woods

Petitioner alleges that he was unconstitutionally denied the opportunity to present the testimony of Dr. Woods, a forensic psychiatrist who opined on a report offered by the

---

[4]Again, the Court reiterates the lack of reliability of the interview.

- 10 -

1 prosecution as to Sorenson's mental health following the incident. The Court, however, finds
2 no constitutional violation, because Petitioner had the opportunity during the aggravation and
3 mitigation hearing to present his own expert witnesses but did not.

## CONCLUSION

5 The Court has found that reasonable jurists could find it debatable whether this Court
6 was correct in its procedural ruling, dismissing Petitioner's Amended Petition for Writ of
7 Habeas Corpus as time-barred. Nevertheless, Petitioner is not entitled to a Certificate of
8 Appealability, because he has failed to make a substantial showing of the denial of a federal
9 constitutional right or whether the Petition states a valid claim of the denial of a
10 constitutional right.

11 Accordingly,

12 **IT IS ORDERED** that Petitioner's Motion for Certificate of Appealability [Doc. No.
13 42] is **DENIED**.

14 DATED this 13th day of March, 2006.

Stephen M. McNamee
Chief United States District Judge